
FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2000 JUN 12 P 1:49

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMES WARD MENGES

VERSUS

CLIFFS DRILLING COMPANY

CIVIL ACTION

NO: 99-2159

SECTION: "R"(3)

## ORDER AND REASONS

Before the Court is plaintiff's motion *in limine* to exclude from trial, in their entirety, defendant's video surveillance tapes of plaintiff. For the following reasons, plaintiff's motion is denied, except to the extent the video filmed on May 4, 2000 is used for impeachment purposes.

### I. Background

This case arises out of two alleged accidents that occurred while James Ward Menges worked as a floorhand on the drill floor aboard Cliffs Drilling Rig No. 180. Plaintiff contends that he sustained his first injury when he bent over to remove a cap from a casing and was struck in the lower back by another casing that

1



DATE OF ENTRY

JUN 1 2 2000

was being moved by an air hoist. The second incident allegedly occurred later the same day when plaintiff was struck in the back of his neck by a piece of rust that fell from the stabbing board. Plaintiff contends that, as a result of these incidents, he experienced pain both to the cervical and lumbar regions, which ultimately required him to undergo surgery. He also contends that his injuries have resulted in chronic pain and restriction in his motion.

As a result of plaintiff's allegations, Cliffs Drilling Company put plaintiff under video surveillance on June 10, 1998, May 4, 2000, and May 5, 2000. Plaintiff seeks to exclude the resulting surveillance tapes, in their entirety, on the grounds that the surveillance videos are not impeachment material and that their admission would be prejudicial to plaintiff and constitute cumulative evidence of plaintiff's deposition testimony. Defendant opposes this motion, responding that the surveillance tapes not only contradict plaintiff's statements of his ability to perform certain activities, but also constitute substantive evidence.

## II. Discussion

In the seminal case *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, *reh'g denied & opin. clarified*, 3 F.3d 123 (5th Cir. 1993), the Fifth Circuit set forth what it considers to be substantive and impeachment evidence. Interestingly, the legal

predicates in *Chiasson* are the same as the case now before this Court. In *Chiasson*, the plaintiff sued her employer under the Jones Act for personal injuries resulting from negligence and unseaworthiness of the vessel on which she served, and among the issues before the court was the characterization of certain video surveillance tapes of the plaintiff.

### A. Substantive Evidence

Addressing substantive evidence first, the Fifth Circuit held that "substantive evidence is that which is offered to establish the truth of a matter to be determined by the trier of fact." *Chiasson*, 988 F.2d at 517. The court then noted that "the severity of [a plaintiff's] pain and the extent to which [a plaintiff] has lost enjoyment of normal activity are among the key issues a jury must decide in calculating [a plaintiff's] damages. Evidence which would tend to prove or disprove such losses must be considered 'substantive.'" *Id.* *Accord Crist v. Goody*, 507 P.2d 478 (Colo. 1972); *Zimmerman v. Superior Court*, 402 P.2d 212 (Ariz. 1965) (en banc). Accordingly, the court found the video surveillance tape to be substantive evidence. *See Chiasson*, 988 F.2d at 517. *See also Innovative Therapy Products Inc. v. Roe*, 1998 WL 293995, at *2 (E.D. La. June 4, 1998) (finding taped statements appeared to be substantive); *Alfortish v. Shoney's Inc.*, 1994 WL 449415, at *2 (E.D. La. Aug. 16, 1994)(finding videotapes to be substantive).

3

Here, plaintiff's assertions of physical pain and disability also are key issues for the jury to decide in calculating his damages. As in *Chiasson*, the surveillance tapes bear directly on the severity of plaintiff's pain and the limitations on his mobility. Plaintiff does not contend that the tapes are inadmissible as irrelevant, unauthentic, or hearsay. Rather, plaintiff argues that they are not proper impeachment evidence and are simply cumulative. The Court holds that the tapes are relevant, substantive evidence, and, therefore, they will not be excluded.

### B. Impeachment

Defendant's alternative argument is that the tapes are admissible as impeachment evidence. The *Chiasson* court addressed the issue of impeachment evidence. The court held that "[i]mpeachment evidence . . . is that which is offered to 'discredit a witness . . . to reduce the effectiveness of his testimony by bringing forth evidence which explains why the jury should not put faith in him or his testimony.'" *Chiasson*, 988 F.2d at 517 (quoting John P. Frank, *Pretrial Conferences and Discovery-- Disclosure or Surprise?*, 1965 Ins. Law J. 661, 664 (1965)). *See also Richardson v. Rodrigue*, 1996 WL 476603, at *5 (E.D. La. Aug. 22, 1996), *amended by* 1996 WL 535084 (E.D. La. Sept. 19, 1996).

After reviewing the videotapes as well as plaintiff's

4

deposition testimony, the Court finds that the June 10, 1998 and May 5, 2000 videos do impeach the plaintiff's testimony, despite plaintiff's assertions that he "clearly testified to the events in which he is depicted on the surveillance tapes." (Mem. Supp. Pl.'s Mot. Limine, at 2.) The first video, filmed on June 10, 1998, shows plaintiff stepping easily up from the front bumper of his truck to squat on the engine under the hood. This imagery contradicts plaintiff's testimony that his restricted motion would have made it difficult for him to get under his truck's hood. (Pl.'s Dep. dated Nov. 19, 1999, at 221-22.) The third video, filmed on May 5, 2000, shows plaintiff squatting and bending, frequently and easily. This imagery contradicts plaintiff's testimony that he has a problem bending and that he was only capable of "slow movement" after a day of exertion. (Pl.'s Dep. dated May 16, 2000, at 38, 40.) Therefore, the Court holds that the video taken on June 10, 1998 and on May 5, 2000 may be used for the purposes of impeachment.

While the second video, filmed on May 4, 2000, shows plaintiff engaged in acts of strength, none of the images directly contradicts plaintiff's deposition testimony. Plaintiff did not deny that he was able to engage in physical activities, and he admitted engaging in setting up for the rodeo, including operating a forklift and sliding panels. That he downplayed the amount of

5

exertion involved does not make the tapes impeaching. Accordingly, the Court holds that the video taken May 4, 2000, may not be used for the purposes of impeachment.

### C. Unfair Prejudice and Cumulative Evidence

Of course, independent of a determination of the substantive or impeachment nature of the tapes, the Court is mindful of Rule 403's admonition to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The court finds, however, that the video surveillance is not cumulative or unfairly prejudicial and that it is admissible relevant evidence. *See* Fed. R. Evid. 401, 402.

## III. Conclusion

For the foregoing reasons, plaintiff's motion *in limine* is denied, except to the extent the defendant seeks to use the video filmed on May 4, 2000 as impeachment evidence.

New Orleans, Louisiana, this 12th day of June, 2000.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE